Thank you, Your Honor. May it please the Court? John Kirby for Mr. Pree. The primary argument from my briefs and from what I'd like to address today is that, in this case, there's a need to interpret the California statute for torture, and I believe that the evidence should be for the trial court, the appellate court, in the state matter, and before Your Honors, is that there's no evidence of an intent to torture. Counsel, this is an AEDPA case which is very deferential to the state court. What's your contention that the conclusion by the state court was contrary to Supreme Court authority? Your Honor, my contention is that there are no facts that show an intent to torture in this case. So you're making a claim that the state court didn't err in the law, but it made an unreasonable application of the facts to the law on the intention to torture. I guess I find that the hardest issue in the case, because there was extensive evidence of voluntary intoxication, but a person can be intoxicated and still have the intent to torture. Why wouldn't the record permit that inference here? Well, I think, as Justice McIntyre noted in his dissent in the appellate court decision, that there has to be some evidence of an intent to inflict extreme pain, as opposed to an explosion of violence. And I think that's what the record shows here, that Mr. Pree intended to rob the victim in this case, and when he met resistance, he resorted to violence. And if you look at the torture cases, if you look at the state case law as to torture and the cases where they found torture, you see some sort of an intent to torture. You see some sort of intent to inflict pain, intent to cause pain to an individual here. But here's the evidence, counsel, was that he bit her ear, which required 100 stitches, while she was unconscious. Now, how does biting an ear aid a robbery when the victim is unconscious? Tell me about it. I'm trying to figure that out. And I think that's a perfect point. She was unconscious. He was not intending to inflict pain. Oh, so when she regains consciousness, there's no pain in the ear because the biting goes away? Because she was not conscious. He was not intending to cause pain to her. Look, Mr. Pree was high on drugs, and that's clear to everyone. But there's no evidence that he inflicted pain. What was he intending to do by biting her and causing her to have 100 stitches? Do you want to go to your next argument? Well, here's a question, I guess, about the California cases. As I understand it, it is not enough to prove that pain was, in fact, inflicted. But there has to be an intent for that, a specific intent for that to be so. But that can be inferred, and I guess that's where I'm having some difficulty, why a jury could not infer that. They could also infer that it was just an explosion of drunken or drug-induced rage that had no specific intent to cause pain. But I guess my question is, why would the court have had to come to that conclusion? If the two conclusions are equally reasonable, one that he intended to cause pain and one that he didn't specifically intend that, don't we have to defer? Well, I think in this case, Your Honor, in due respect, you do have to look at the intoxication issue. You have to look at whether or not he had the specific intent to inflict pain. And I do not believe the evidence shows that. I don't think anything in the record shows that. You look at the cases where they find torture. You look at cases where someone is shot and then made to move to a different location. You look at the Singleton case itself, which was the origin of the torture statute, where a girl was raped, her arms cut off and left for dead. That is torture. In this particular case, you have Mr. Pree, who was intending to rob someone, who was then kicked in the groin and in a rage inflicted injury on the woman. In part for revenge, for her kicking him in the groin. Isn't that a fair inference that a jury can draw? Isn't revenge one of the elements of intention to torture? An explosion of violence is specifically not what the torture statute is meant to apply to. Isn't infliction of pain for purposes of revenge an instance of torture? All right. Thank you. Thank you, counsel. I assume you will reserve the remainder of your time. Yes, you may. We'll hear from the government. May it please the Court, Daniel Rogers, Deputy Attorney General for Respondent and Appellee. Your Honors, the State court in this case reasonably determined that a jury considering these facts could have found that Mr. Pree acted with the specific intent to kill someone. Counsel, the thing that was most difficult for me in this case, from your client's perspective, is that the California courts in analyzing this case don't really expressly come to grips with his level of intoxication. They don't really mention it at all. And it's certainly possible that someone who did the things that this gentleman did, or non-gentleman as the case may be, could have had the specific intent to torture. But it's also possible that he did not. Because as I understand the cases, and you can tell me if I'm wrong here, but it isn't enough to have actually inflicted pain. There has to be a specific intent to do so. Correct, Your Honor. The specific intent element is the difference between torture and a battery. And why is the California court's analysis of the facts sufficient where it does not discuss his level of intoxication and the other permissible inferences that could be drawn from the evidence that we have? Because that, after all, was a subject of concern to the jury, the intoxication question. Well, Your Honor, I think Jackson v. Virginia provides the answer to Your Honor's question. Because the California court is to consider the evidence in the light most favorable to the judgment. The question of voluntary intoxication was before the jury. And certainly the jury could have found that his level of intoxication was such that he lacked the ability to form the specific intent. But, well, if I may back up a moment. And that is, it is further evidence when we look at the jury question that's at issue in the IAC claim later on, that the jury was considering the question of specific intent. And the effect of voluntary intoxication on Mr. Perry's ability to form that specific intent. However, what the California court did is not ignore voluntary intoxication entirely, but to assume, viewing the evidence in the light most favorable to the judgment, that the jury found that he was not so intoxicated as to be unable to form that specific intent. So the court makes the implied finding, at least, that the jury rejected the specific, the voluntary intoxication defense, if you will, to that finding of specific intent. Counsel characterizes this as an explosion of rage, rather than an action of anger. And, again, this is a case that's been taken with the specific intent to cause cruel and extreme pain and suffering. The difference here is that, and the court of appeal addressed this, when it sort of intellectually categorized the attack in two phases, if you will. The initial struggle, when the victim testified that she kicked Mr. Perry in the groin, and possibly, possibly, the victim was not able to form that specific intent, possibly one could argue that the retaliatory strike with the club was that explosion of rage. But then she's choked into unconsciousness. She's not fighting back anymore. She's no longer a threat. She is no longer an obstacle to this robbery. She is an utterly defenseless victim, who he then, very deliberately, gathers up into his arms, and inexplicably begins biting her ear savagely enough to require 100 stitches. He also bites her back. Well, inexplicably doesn't help you. It has to be explicable by a desire to cause pain, because if he's just acting out of complete intoxication, it still doesn't count. And I spoke inartfully, Your Honor. It's not easily understood as a motivation by you or me. It may be as what you're saying. Correct. Correct. I would draw upon any sadistic purpose language of the statute. I mean, it is inexplicable to a rational motivation such as robbery, but it does, when we get into the idea of sadistic purposes and experiencing pleasure from causing pain to another, that's the only explanation left that makes any sense. Thus, I again think counsel began his argument by saying that this Court needs to interpret the elements of Penal Code Section 206. And I think that is entirely the job of the California courts. The only question before this Court is whether the California court reasonably applied Jackson. And on this record, I think a State court would not act unreasonably in finding that a jury relying on this evidence could have  found another intent, but they could have found the specific intent required for torture on these facts. So unless the Court has any questions, Respondent would ask that the judgment of the district court denying the petition be affirmed and would submit. Thank you, counsel. Mr. Kirby, you have some reserve time if you wish to use it. Just very briefly, Your Honors. I mean, the question really, I've briefed several issues, but the question is really whether there was any evidence as to specific intent to cause extreme pain, and with the issue of intoxication, with the fact that Mr. Pree, I mean, the issue here is, is Mr. Pree biting the ear of the victim? That's what it comes down to here. And the issue of whether that amounts to evidence of intent to inflict extreme pain. And I think if you look at the intoxication issues, you look at the fact that the victim was unconscious, you look at the other cases that talk about torture and talk about the infliction of extreme pain, you see this case is different. And the government goes to great lengths to say you cannot look at the different facts, you cannot look at the different facts of the case, but that's what judges do, and that's what you all do. You look at the facts and you look at the legal principles and you apply them. And that's what I ask your honors to do at this point. Mr. Pree had no specific intent to cause extreme pain to this victim. Thank you, counsel. The case just argued will be submitted for decision, and the court will take its morning recess. Ten minutes.
judges: O'scannlain, Graber, Bea